IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **ERIC FORBUSH** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | NO. 24-4492 |
| **THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, et al.** | : | |
| | : | |
| Defendants. | : | |

J. Perez                                                                                                            October 14, 2025

## MEMORANDUM

Pro se Plaintiff Eric Forbush, a former doctoral student at the University of Pennsylvania, brings this action against the University and several faculty and administrators. Plaintiff brings ten causes of action, including federal claims for disability discrimination and retaliation under the ADA and § 504, sex discrimination and retaliation under Title IX, race discrimination under Title VI and § 1981, and state-law claims for breach of contract, negligent supervision, and intentional and negligent infliction of emotional distress. These claims arise from alleged procedural irregularities, discrimination, and retaliation surrounding his comprehensive exams, denial of accommodations, and ultimate dismissal from Penn's doctoral program in 2020. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing both that all claims are barred by the applicable statutes of limitations and that the Complaint otherwise fails to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted.

I.   **STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. *Id.* at 678. A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

When reviewing a plaintiff's complaint on a motion to dismiss, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In considering a motion to dismiss a pro se complaint, a court must bear in mind that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). This more liberal construction of pro se complaints does not, however, absolve a pro se plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("[A] pro se complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we

nonetheless review the pleading to ensure that it has 'sufficient factual matter[,] accepted as true[,] to state a claim to relief that is plausible on [its] face.'").

A statute of limitations defense may be resolved at the Rule 12(b)(6) stage when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

## II.     BACKGROUND[1]

This case concerns Plaintiff Eric Forbush's dismissal from a doctoral program at Penn's Annenberg School for Communication in September 2020[2] after he failed the programs' comprehensive exams. Plaintiff contends that he did not fail due to his academic performance. Instead, he alleges that Defendants "[m]anipulat[ed] exam outcomes to ensure [his] failure" and "[i]nvolv[ed] faculty members with conflicts of interest in the examination and dismissal process." ECF No. 1 at 6:22. Plaintiff asserts that Defendants' pattern of mistreatment began in November 2019, after he emailed a peer-reviewed article that was critical of the concept of microaggressions to organizers of a departmental panel. *Id.* A fellow student replied with what Plaintiff characterizes as an "explicitly racial, gendered, and threatening" email stating, "I do not need white men and their 'objective' science," and instructed him not to attend the panel. ECF No. 13 at 4. Plaintiff reported the incident to the University, which declined to take disciplinary action and instead issued a department-wide message emphasizing the importance of the workshop. *Id.* He alleges that this response caused him to suffer widespread academic isolation and reputational harm, and

---

[1] The Court accepts as true the factual allegations in the Complaint for purposes of this motion. Plaintiff's response brief includes additional factual allegations that go beyond what he pled in the Complaint. The Court cannot ordinarily consider new facts raised for the first time in briefing; its review is limited to the Complaint itself. Because the Court is dismissing this case with prejudice, however, it has considered those additional facts to the extent necessary to determine whether amendment would be futile. The new allegations do not affect the statute of limitations analysis and do not support Plaintiff's arguments under the continuing violation doctrine or any other theory he has raised. Accordingly, permitting amendment would not change the outcome of this decision.

[2] The Complaint does not indicate when his enrollment in the doctoral program began.

that the University failed to take any steps to restore his standing. ECF No. 1 at 6:22. Despite increasing "social and professional hostility," Plaintiff proceeded with his doctoral studies. ECF No. 13 at 6.

Plaintiff further alleges a series of irregularities and unfair treatment in connection with his comprehensive examinations. For example, in March 2019—before the microaggressions email incident—he formed his doctoral exam committee, intentionally including Dr. Diana Mutz, a faculty member he had selected as a "safeguard against retaliatory or ideologically motivated actions." ECF No. 13 at 6. Unbeknownst to him, however, the University later "secretly removed" Dr. Mutz and replaced her with another faculty member he describes as "left-leaning." *Id*. According to Plaintiff, this substitution violated the Graduate Student Handbook and is evidence of "procedural sabotage and retaliation." *Id.*

In August 2019, Plaintiff submitted his comprehensive exam reading list to his advisor, who did not approve it despite repeated follow-ups. *Id.* at 7. When the exams were administered in January 2020, two questions reflected the topics he had proposed, but a third addressed subjects not included on his list, leaving him unprepared. *Id.* After he failed the exam, a majority of the committee recommended a partial retake, but his advisor required a full retake—contrary to University policy—and delayed providing written feedback until after the decision was finalized. *Id.* at 7-8. In preparation for his second round of comprehensive exams, Plaintiff sought disability accommodations for ADHD and depression in May 2020. On July 7, 2020, the Student Disabilities Services ("SDS") approved his request for 50% extended time, allowing 12-hour exams to be split into two six-hour sessions. *Id.* at 8. However, on July 20, 2020, the assistant dean overrode that approval, reasoning that the two-day format gave Plaintiff an advantage rather than an accommodation, and his advisor agreed. *Id.* at 9. Within 48 hours, SDS rescinded its prior approval

4

without new documentation, offering instead only additional breaks. *Id.* Plaintiff appealed, alleging that the reversal reflected unlawful interference with the ADA process, but on July 28, 2020, SDS issued a final denial. *Id.* Plaintiff then sat for his exam "under protest." *Id.*

In September 2020, Plaintiff was "abruptly removed from the program without prior notice or feedback on his comprehensive exams." ECF No. 1 at 14:33. Plaintiff appealed his dismissal, but his appeal was denied on October 3, 2020. ECF No. 13 at 11. He further alleges that he has since suffered reputational harm, strained peer relationships, and emotional distress. ECF No. 1 at 13:27. While Plaintiff's Complaint fails to identify any specific adverse actions by Defendants after October of 2020, Plaintiff supplements in his response brief that he attempted to seek reinstatement in late 2023 and early 2024. ECF No. 13 at 13. He contends that he began "informal outreach" in December 2023, followed by a formal email request on January 18, 2024, which the dean denied on January 30, 2024. *Id.* Plaintiff later requested a phone call, which occurred on February 27, 2024, during which the dean reiterated her denial and declined to acknowledge wrongdoing by the University. *Id.*

On August 27, 2024, Plaintiff filed the present complaint, asserting the following ten causes of action: (1) failure to accommodate under the Americans with Disabilities Act ("ADA"); (2) ADA retaliation; (3) Title IX discrimination; (4) Title IX retaliation; (5) Title VI discrimination; (6) 42 U.S.C. § 1981 race discrimination; (7) breach of contract under Pennsylvania law; (8) negligent supervision; (9) intentional infliction of emotional distress; and (10) negligent infliction of emotional distress. ECF No. 1.

**III. STATUTES OF LIMITATIONS**

This Court concludes that nine of Plaintiff's ten claims are subject to Pennsylvania's two-year statutes of limitations. As to the federal claims asserted under the ADA (Counts I and II), Title IX (Counts III and IV), Title VI (Count V), and Section 1981 (Count VI), the Court applies the most analogous state statute of limitations. Where a federal statute is silent regarding the timeliness of claims, federal courts borrow the relevant state limitations period. *Hardin v. Straub*, 490 U.S. 536, 538 (1989); *Regents v. Tomanio*, 446 U.S. 478, 483–85 (1980). Because none of these federal laws contain their own built-in limitations period, this Court looks to Pennsylvania's two-year personal injury statute of limitations. 42 Pa. Cons. Stat. § 5524; *See, e.g.*, *Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 208 (3d Cir. 2008) (applying Pennsylvania's two-year statute of limitations for ADA claims); See *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77–78 (3d Cir. 1989) (applying Pennsylvania's two-year statute of limitations to Title IX claims); *Munchak v. Ruckno*, 692 F. App'x 100, 102 n.3 (3d Cir. 2017) (same for Title VI claims); *Ke v. Ass'n of Pa. State College & Univ. Faculties*, 447 F. App'x 424, 425-26 (3d Cir. 2011) (Section 1981 claims cognizable under the pre–amendment version subject to two year statute of limitations). Plaintiff's state-law claims for negligent supervision (Count VIII), intentional infliction of emotional distress (Count IX), and negligent infliction of emotional distress (Count X) are plainly subject to Pennsylvania's two-year personal injury statute of limitations. 42 Pa. Cons. Stat. § 5524. And finally, Plaintiff's breach of contract claim under Pennsylvania law (Count VII) is subject to a four-year statute of limitations. 42 Pa. Cons. Stat. § 5525.

Under federal law, "a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); *Bennett v. Susquehanna Cnty. Child. & Youth Servs.*,

592 F. App'x 81, 83 (3d Cir. 2014). Plaintiff's federal claims accrued at the latest in October 2020, when his appeal from his dismissal from the doctoral program was denied. Plaintiff's last alleged discriminatory or retaliatory act occurred in October 2020, when he was dismissed from the program and denied an appeal. He did not file his complaint until August 27, 2024—nearly four years later—placing his federal and state civil rights and tort claims well outside Pennsylvania's two-year statute of limitations. Plaintiff's claims must therefore be dismissed as untimely unless the statute of limitations is tolled under equitable principles or the continuing violations doctrine applies. Neither theory applies here.

The Third Circuit has noted three circumstances in which federal equitable tolling is appropriate: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold,* 232 F.3d 360, 370 n. 9 (3d Cir.2000). None of these scenarios apply here.

In his opposition brief, Plaintiff attempts to extend the timeline of his complaint by asserting that he contacted the dean in 2023 to inquire about reinstatement. However, he concedes that this communication did not constitute a "formal appeal." ECF No. 13 at 13. Such informal outreach does not amount to a new discriminatory or retaliatory act and is insufficient to restart or toll the limitations period. See, e.g., *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (limitations period runs from the time of the alleged unlawful act, not from subsequent requests for reconsideration).

Plaintiff seeks to characterize the University's failure to reinstate him despite subsequent requests and his ongoing reputational harm as a continuing violation. When a defendant's conduct

7

is part of a continuing practice, the statute of limitations is extended so that an action will be timely as long as the last act evidencing the continuing practice falls within the limitations period. *Brenner v. Local 514, United Bd. of Carpenters & Joiners,* 927 F.2d 1283, 1295 (3d Cir.1991). In this case, if the plaintiff's claims concerning the failure to reinstate him were filed within the statute of limitations and were part of a continuing practice with his dismissal, then the plaintiff's otherwise time-barred claims concerning the dismissal would be timely.

A continuing violation theory, however, is restricted to situations like those alleging a hostile work environment, involving repeated actions that may not be actionable on their own. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002). The theory does not apply to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" in which "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 114. The continuing violation theory applies when a plaintiff can "demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *West v. Philadelphia Electric Company,* 45 F.3d 744, 754 (3d Cir.1995) (citing *Bronze Shields, Inc. v. New Jersey Department of Civil Service,* 667 F.2d 1074, 1081 (3d Cir.1981)). The theory relies upon the fact that sometimes it is "appropriate to 'measure[] the running time of the required time period from the last occurrence of the discrimination and not from the first occurrence.'" *Id.* (quoting *Bronze Shields,* 667 F.2d at 1081).

The continuing violations doctrine is a narrow exception to the standard rule that the statute of limitations begins to run when the plaintiff knew or should have known of the injury. It applies only when a defendant's conduct constitutes a continuing pattern of unlawful acts, as opposed to the continued effects of a single past act. See *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157,

8

165–66 (3d Cir. 2013). In other words, the doctrine does not revive otherwise time-barred claims merely because the plaintiff continues to feel the impact of a prior discriminatory or retaliatory act.

Plaintiff's email to the dean in 2023, in which he informally requested reinstatement, does not constitute a new discriminatory or retaliatory act by the University. It was Plaintiff's unilateral action, not University conduct, and the University's decision not to reconsider his dismissal was simply a consequence of the original decision in 2020, not a separate actionable event. Courts consistently hold that "requests for reconsideration do not extend the limitations period," because they reflect the effects of the prior decision, not a new violation. See *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (limitations period runs from the time of the discriminatory decision, not the date a grievance is denied).

Similarly, any alleged ongoing reputational harm that Plaintiff suffers as a result of his 2020 dismissal does not amount to a continuing violation. Reputational injury is a continuing consequence of a past act, not a continuing unlawful act by the defendant. The Third Circuit has made clear that "the continuing violations doctrine does not apply when plaintiffs are aware of the injury at the time it occurred, even if they continue to experience ongoing effects." *Mandel*, 706 F.3d at 165–66.

Accordingly, neither Plaintiff's informal outreach to the University in 2023 nor any alleged future reputational harm can restart the limitations period or support application of the continuing violations doctrine. The only actionable conduct occurred in 2020, when Plaintiff was dismissed and denied an appeal.

All of Plaintiff's federal claims, as well as his state tort and state civil rights claims, are barred by the applicable two-year statute of limitations and will be dismissed with prejudice. The

breach of contract claim, however, is governed by a four-year statute of limitations and therefore it is at least plausible that it is not time-barred. Because the only remaining claim arises under state law, and the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1367(c)(3).[3] That claim will be dismissed without prejudice to Plaintiff's ability to pursue it in state court.

## IV. CONCLUSION

Dismissal is with prejudice where amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Plaintiff's own timeline forecloses any amendment on the nine out of ten claims subject to the two-year statute of limitations. His complaint alleges no conduct after October 3, 2020, and his attempt to add new facts in his opposition papers, albeit an improper attempt, demonstrates he can allege no additional facts occurring within the limitations cutoff that would restart the clock. No amendment could cure these defects. Because amendment would be futile, these claims are dismissed with prejudice. Since every federal claim is barred by the statute of limitations and no extraordinary circumstances exist warranting supplemental jurisdiction, Plaintiff's breach of contract claims is dismissed without prejudice.

---

[3] A district court "may decline to exercise supplemental jurisdiction" over state law claims if it "has dismissed all claims over which it has original jurisdiction[,]" unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction. *Patel v. Meridian Health Sys., Inc.,* 666 F. App'x 133, 136 (3d Cir. 2016) (citing 28 U.S.C. § 1367(c)(3) and *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). Given the absence of any remaining federal causes of action or any extraordinary circumstances justifying this Court's exercise of supplemental jurisdiction over a Pennsylvania breach of contract claim, Count VII is also dismissed. If Plaintiff chooses to, he may file this claim in state court.